UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



FILED

OCT 3 0 2017

CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEREMIAH R. WALN,<br>JESSE J. WALN,<br>DOMINIC JOSEPH STONEMAN,<br><br>Defendants. | 3:17-CR-30004(01)(02)(04)-RAL<br><br><br>REPORT AND<br>RECOMMENDATION FOR<br>DISPOSITION OF MOTIONS TO<br>SUPPRESS |

Local police traced items recovered from a series of burglaries and larcenies to Jeremiah (Jeremy) Waln, Jesse Waln, and Dominic Stoneman. A tribal special agent later obtained a warrant to search the house the Walns were living in. After the search, Jesse was questioned while in jail. The Walns and Stoneman seek to suppress the evidence seized from the home. Jesse and Stoneman also seek to exclude their statements to tribal agents and, in Jesse's case, the buccal swabs he gave while being interviewed. Because the search did not violate the Fourth Amendment and the statements and swabs were not illegally obtained, the Court recommends that the suppression motions be denied.

## BACKGROUND

At one time, Patricia Burnette and Debra Waln lived across the street from each other in Mission, South Dakota. Beau Westover resided next to the Cherry Todd Electric building and service yard and only a few blocks away from Burnette and Debra.

On May 22, 2016, Burnette's home was broken into and looted. The burglars took cash, jewelry, T.V.s, lawn mowers, golf clubs, and other items. One of them was an authentic, autographed framed picture of Michael Jordan. Tribal police began an investigation, but did not have any viable leads as to who the culprits were.

Over Veteran's Day weekend of 2016, Westover's residence was burglarized. Among the many items and devices pilfered from the home were 14 firearms and a whole host of ammunition.

While investigating the Westover burglary, police determined that the fence around the Cherry Todd complex had been cut in two spots. Further investigation revealed that copper wire had been lifted from the service yard and several tools and a generator were snatched from a truck parked in the yard.

On November 17, 2016, Robert Sedlmajer, a special agent with the Rosebud Sioux Tribe, received information from Juel Burnette that Bobbi Bush had the Michael Jordan picture which had been filched from Patricia Burnette's home. Bush told the agent that Jesse had tried to sell her the picture for $2,500 several months earlier. She still had the picture and Agent Sedlmajer collected it from her.

2

That same day (November 17) Calvin Waln, Jr., a police captain for the Tribe, met with Anpo Star Eastman at the Rosebud Police Department. Eastman and Jeremy have two children together. Eastman informed Captain Waln that Jeremy, Jesse, Stoneman, Dakota Marshall, and Danielle White Eyes had broken into a house near the Cherry Todd facility and had stolen guns and other items. She said she observed Jeremy with at least four of the purloined firearms. According to Eastman, some of the thieved items, including a black shotgun, were in the trees near Calvin Waln, Sr.'s rental home, approximately nine miles from Mission. Other items, she reported, were at Debra's residence. Yes, Jeremy, Jesse, and Captain Waln are all related – they are brothers – and are the offspring of Calvin, Sr. and Debra.

Armed with this information, Marlin Enno, the Tribe's police chief, and three other officers (one of whom was Captain Waln), went to Calvin, Sr.'s residence. There, Chief Enno and another officer uncovered items that had been appropriated from Westover's home. Based on the information Eastman, Juel Burnette, and Bush had provided and the evidence police had recovered, Agent Sedlmajer applied for and was given a "no knock after hours" warrant to search Debra's house for the spoils of the two burglaries. Jeremy and Jesse were residing in the home at the time and were present when officers arrived to execute the warrant. They were immediately detained and then arrested on tribal charges after several items belonging to Westover and drug paraphernalia were found in the dwelling place.

Agent Sedlmajer and Kory Provost, another special agent with the Tribe, interviewed Jesse at the Rosebud jail the following day. Jesse was Mirandized and agreed to speak with the agents. During the interview, he made various incriminating statements. He also consented to buccal swabs being taken from him and compared with other biological samples that had been gathered from the Burnette and Westover house break-ins.

Jeremy and Jesse were thereafter indicted on burglary, larceny and firearm possession offenses for items taken from the Burnette and Westover homes and from a vehicle parked at the Cherry Todd service yard. Stoneman was indicted and charged with burglary and larceny for his role in the Westover marauding. All three now seek to suppress the evidence impounded from Debra's residence, Jesse and Stoneman want the statements they made to tribal agents kept out of the trial, and Jesse contends his buccal swabs should be excluded as well. The Court held a hearing to address the parties' claims at which two witnesses testified and seven exhibits were received into evidence.

## DISCUSSION

### A.   Withdrawn Claims

Jeremy, Jesse, and Stoneman have withdrawn their claims relating to the suppression of items seized from (1) the fields, trees, and junk cars located near Calvin, Sr.'s rental home; (2) Marshall's residence; and (3) one of Marshall's vehicles. The trio

4

have also withdrawn their claims seeking to exclude Jeremy and White Eyes' custodial

statements. Given the plea arrangements, some of the Co-Defendants have entered into

with the Government, Jeremy, Jesse, and Stoneman's standing problems, and the

obstacles they face in mounting a successful challenge to such evidence, withdrawal of

these claims is understandable and just the kind of winnowing of issues the Court

expects and appreciates from litigants.

## B. Standing and Waiver/Forfeiture of Claims

Stoneman though has not withdrawn one of the claims he has joined in on,

namely, that the search of Debra's residence and the seizure of evidence from it violated

the Fourth Amendment. Why he has chosen to pursue, and does not drop, this claim is

unclear. It gets him nowhere – because he lacks standing to challenge the search and

seizure.

"Fourth Amendment rights are personal and may not be vicariously asserted."[1]

"A person challenging the constitutionality of a search must demonstrate a legitimate

expectation of privacy in the area searched – that is, he must have a subjective

expectation of privacy that society is prepared to recognize as reasonable."[2] The fact

that the person may be aggrieved by the search and seizure, through the introduction of

---

[1]*United States v. Wright*, 844 F.3d 759, 762 (8th Cir. 2016) (*citing Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)), *cert. denied*, 137 S.Ct. 2279 (2017).

[2]*Id.* (*citing Rakas*, 439 U.S. at 143 & n.12).

damaging evidence secured from the premises, does not mean that his rights have been infringed.[3]

Stoneman did not own or live in Debra's house and he was not an overnight guest at the time of the search. Beyond this, Stoneman has not come anywhere close to proving – as he must – that he had an objectively reasonable expectation of privacy in the home or any of its contents.[4] Hence, he has no room to complain about the warrant issued for the residence, the search of it, or any of the items confiscated from the same.[5]

In his motion, Stoneman alludes to suppressing, as trial evidence, the statements he made. He does not identify, however, what statements should be excluded or the legal basis for doing so. Because he has failed to set forth either the particulars or the grounds for relief needed to conduct meaningful review, the Court assumes that Stoneman has waived any claim to suppress statements he may have made or has forfeited such a claim.[6] Regardless, Stoneman is not entitled to have his statements banned, or to other redress limiting the use of them, on this record:

---

[3]*See Rakas*, 439 U.S. at 134; *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir.), *cert. denied*, 135 S.Ct. 2390 (2015).

[4]*See Maxwell*, 778 F.3d at 731-33.

[5]*See Wright*, 844 F.3d at 762; *Maxwell*, 778 F.3d at 732-33; *United States v. Davis*, 361 Fed. Appx. 704, 705-06 (8th Cir. 2010); *United States v. Brown*, 408 F.3d 1049, 1051 (8th Cir. 2005).

[6]*See* 1A Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure*, §193, at pp. 425-26 & nn. 47, 47.50 (4th ed. 2008 & 2017 Supp.); L.R. 47.1C (Dec. 1, 2015) (requiring the movant in a criminal case to file a brief containing the specific points of
(continued...)

## C. Search of Debra's Residence.

Jeremy and Jesse Waln both claim that the telephonic search warrant for Debra's home was unlawfully issued and executed. As a consequence, they say, all of the evidence tribal police seized under the authority of the warrant should be suppressed.

In light of probable cause and procedural issues that exist, ascertaining – definitively – whether the tribal search warrant comported with Fourth Amendment strictures is no easy task. The Court though need not engage in this complicated exercise because there is a simpler, and more straight forward, way to resolve the overarching constitutional question: the "good-faith" exception to the warrant requirement.[7]

In *United States v. Leon*,[8] the Supreme Court created an exception to the Fourth Amendment Exclusionary Rule.[9] Under this exception, the Rule is not to "be applied to exclude the use of evidence obtained by [ ] officers acting in reasonable reliance on a

---

law and authorities in support thereof which he relies on).

[7]*See United States v. Patten*, 664 F.3d 247, 250-51 (8th Cir. 2011), *cert. denied*, 132 S.Ct. 1986 (2012); *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011); *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).

[8]468 U.S. 897 (1984).

[9]*Id.* at 922.

detached and neutral [ ] judge's determination of probable cause and the issuance of a search warrant that is ultimately found to be invalid."[10]

The rationale behind the exception is straight forward.  It is the issuing judge's responsibility to determine whether probable cause exists and, if so, to issue a warrant that complies with the dictates of the Fourth Amendment.  Ordinarily, an officer cannot be expected to question or second guess the judge's probable-cause determination or the technical sufficiency of the warrant itself.  "[O]nce the warrant issues, there is literally nothing more the [officer] can do in seeking to comply with the law."[11] Penalizing the officer for the judge's errors, rather than the officer's own, does not deter Fourth Amendment violations.[12]

The *Leon* exception does not exclude evidence when an officer's reliance on a judge-issued warrant is objectively reasonable.[13]  But if the judge issuing the warrant is misled by information in an affidavit that the affiant knows is false or is made with reckless disregard for the truth, suppression remains an appropriate remedy.[14]  The

---

[10]*United States v. Taylor*, 119 F.3d 625, 629 (8th Cir.) (*citing Leon*, 468 U.S. at 905), *cert. denied*, 522 U.S. 962 (1997); *see also United States v. Gipp*, 147 F.3d 680, 688 (8th Cir. 1998) (applying the *Leon* good-faith exception to a tribal search warrant).

[11]*Leon*, 468 U.S. at 921.

[12]*See id.*

[13]*See id.* at 922-23; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984); *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012).

[14]*See Leon*, 468 U.S. at 923.

8

exception also does not apply where the issuing judge totally abandons his judicial role because when this occurs, no reasonably well-trained officer should rely on the warrant.[15] And an officer cannot manifest objective good faith in relying on a warrant when the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in [the warrant's] existence entirely unreasonable."[16] Finally, depending on circumstances of the case, a warrant may be so facially deficient – because, for example, it failed to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.[17]

None of these disqualifying conditions precedent are present here.    Nothing Agent Sedlmajer stated in his affidavit contained knowing, intentional, or reckless falsities.[18] And any alleged omissions did not make the affidavit misleading or skew the probable cause showing made in it.[19]

What's more, there is no evidence that the tribal judge failed to act in a neutral and detached manner or that he was a mere "rubber stamp" or an "adjunct law

---

[15]See id.

[16]Id.

[17]See id.; Sheppard, 468 U.S. at 988-91.

[18]See United States v. Chambers, 987 F.2d 1331, 1334 (8th Cir. 1993); United States v. Long, 30 F.Supp.3d 835, 836 (D.S.D. 2014), aff'd, 797 F.3d 558 (8th Cir. 2015); United States v. Medearis, 775 F.Supp.2d 1110, 1122 (D.S.D. 2011).

[19]See United States v. Cannon, 703 F.3d 407, 414-15 (8th Cir.), cert. denied, 133 S.Ct. 2375 (2013).

enforcement officer."[20]   Nor is there evidence to suggest that the judge was somehow involved in the "competitive enterprise of the ferreting out of crime"[21] or that he "blindly" approved the search warrant.[22]

Although the legal sufficiency question is a somewhat closer one, the Court cannot conclude that the tribal judge issued a warrant that was completely devoid of probable cause and thus could not reasonably be relied on as a basis for searching Debra's residence and seizing evidence from it.[23]   Perhaps the judge could have been more demanding of Agent Sedlmajer, made further inquiries of him, and required more

---

[20]*See Long*, 797 F.3d at 566-67; *United States v. Farlee*, 757 F.3d 810, 819-20 (8th Cir.), *cert. denied*, 135 S.Ct. 504 (2014); *United States v. Grant*, 490 F.3d 627, 633-34 (8th Cir. 2007), *cert. denied*, 552 U.S. 1281 (2008); *Chambers*, 987 F.2d at 1334-35; *see also Long*, 30 F.Supp.3d at 859-61 (discussing *Leon's* second exception and concluding that the tribal judge was not biased but even if she lacked neutrality, the officer applying for the warrant did not know this); *see and compare with Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-27 (1979); *United States v. Decker*, 956 F.2d 773, 777-78 (8th Cir. 1992).

[21]*See Johnson v. United States*, 333 U.S. 10, 14 (1948).

[22]*See United States v. LaBatte*, No. CR. 12-30158-RAL, 2013 WL 2286340 at *6 (D.S.D. May 23, 2013); *United States v. Valandra*, No. CR. 11-30010-RAL, 2011 WL 3439919 at *4 (D.S.D. Aug. 5, 2011); *Medearis*, 775 F.Supp.2d at 1122; *see and compare with United States v. Swift*, 720 F.Supp.2d 1048, 1058-59 (E.D. Ark. 2010) (suppressing evidence where a blanket affidavit contained boilerplate language allowing car searches at house, no probable cause to search cars existed, and judge who signed the warrant did so "without question or hesitation").

[23]*See Farlee*, 757 F.3d at 819; *Patten*, 664 F.3d at 250-51; *United States v. Fiorito*, 640 F.3d 338, 345-46 (8th Cir. 2011), *cert. denied* 565 U.S. 1246 (2012); *Grant*, 490 F.3d at 632-33; *United States v. Hallam*, 407 F.3d 942, 946-47 (8th Cir. 2005); *United States v. Hessman*, 369 F.3d 1016, 1023 (8th Cir. 2004), *cert. denied* 543 U.S. 1072 (2005); *Chambers*, 987 F.2d at 1335; *Valandra*, 2011 WL 3439919 at **5-8.

facts before approving the warrant. But the judge did not ratify a warrant affidavit that was bereft of probable cause, perfunctory, or "bare bones."[24]

Finally, the search warrant was not so facially deficient that no officer could reasonably presume it to be invalid.[25] The warrant was sufficient because it described – with particularity – the place to be searched and the items to be seized so that Agent Sedlmajer could reasonably assume the same was enforceable.[26]

The *Leon* exception has been applied in circumstances similar to those in this case.[27] Courts have likewise applied the exception where technical, non-fundamental

---

[24]*See Leon,* 468 U.S. at 915, 926; *Grant,* 490 F.3d at 632-33; *United States v. Koons,* 300 F.3d 985, 991 (8th Cir. 2002); *LaBatte,* 2013 WL 2286340 at *5; *see also and compare with Aguilar v. Texas,* 378 U.S. 108, 109 (1964); *Giordenello v. United States,* 357 U.S. 480, 481 (1958); *Nathanson v. United States,* 290 U.S. 41, 44, 46-47 (1933).

[25]*See Long,* 797 F.3d at 568; *United States v. Houston,* 665 F.3d 991, 995 (8th Cir.) , *cert. denied,* 132 S.Ct. 2418 (2012); *United States v. Guzman,* 507 F.3d 681, 686 (8th Cir. 2007); *United States v. Carpenter,* 341 F.3d 666, 673 (8th Cir. 2003); *United States v. Smith,* 63 F.3d 766, 769 (8th Cir. 1995), *cert. denied,* 516 U.S. 1063 (1996); *Medearis,* 775 F.Supp.2d at 1122.

[26]*See Long,* 30 F.Supp.3d at 861; *Valandra,* 2011 WL 3439919 at **8-9; *Medearis,* 775 F.Supp.2d at 1122.

[27]*See e.g. United States v. Cote,* 569 F.3d 391, 392-93 (8th Cir. 2009) (failure to record police officer's supplementary testimony); *United States v. Cazares-Olivas,* 515 F.3d 726, 729-30 (7th Cir.) (cocaine seized from residence, based on a telephonic authorization to search and with no written warrant, not subject to suppression under exclusionary rule), *cert. denied,* 555 U.S. 834 (2008); *Hessman,* 369 F.3d at 1018-23 (applying *Leon* where search warrant was issued by telephone and fax but officer had not signed warrant application and magistrate did not place officer under oath or talk to him about the facts supporting application before signing warrant and faxing it back for execution); *United States v. Chaar,* 137 F.3d 359, 362-64 (6th Cir. 1998) (police officer's reliance on telephonic warrant was in good faith and objectively reasonable even though warrant (continued...)

11

errors have occurred in the warrant process.[28]

---

did not comply with Rule 41's recording and transcription requirements); *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir.) (Fourth Amendment does not require that statements made in support of probable cause be tape recorded or otherwise placed on the record or made a part of the search warrant affidavit), *cert. denied*, 513 U.S. 907 (1994); *United States v. Richardson*, 943 F.2d 547, 548, 550-51 (5th Cir. 1991) (reversing district court's decision to suppress where agent had not signed affidavit and judge, in a telephone conversation, did not require an oath or affirmation of facts in affidavit); *Mills v. Graves*, 930 F.2d 729, 734 (9th Cir. 1991) (upholding telephone search warrant despite fact that officer's oath was taken five days after search); *United States v. Rome*, 809 F.2d 665, 668-71 (10th Cir. 1987) (suppression of evidence obtained from telephonic search warrant, issued in violation of Rule 41, would not serve "remedial objectives" of exclusionary rule, as approved by *Leon*); *LaBatte*, 2013 WL 2286340 at **4-6 (despite shortcomings in search warrant application as to probable cause and particularity, evidence need not be suppressed because of good-faith exception); *Valandra*, 2011 WL 3439919 at **3-8 (applying *Leon* in spite of deficiencies in application and issuance of tribal telephonic search warrant); *Medearis*, 775 F.Supp.2d at 1122-24 (officer's reliance on tribal judge's issuance of oral search warrant by telephone, even though judge failed to administer oath to officer, was objectively reasonable and thus good-faith exception applied); *United States v. McGriff*, 678 F.Supp. 1010, 1016-17 (E.D.N.Y. 1988) (good-faith exception to exclusionary rule bars suppression of drug evidence seized from defendant's home even if telephonic search warrant was flawed because of an insufficient showing as to reliability and trustworthiness of unnamed informant).

[28]*See e.g. United States v. Thomas*, 263 F.3d 805, 808-09 (8th Cir. 2001) (upholding search under *Leon* even when facially obvious error exists on warrant), *cert. denied*, 534 U.S. 1146 (2002); *United States v. Hornbeck*, 118 F.3d 615, 617-18 (8th Cir. 1997) (failure to timely file return and provide defendant with inventory of property seized, in violation of tribal law, did not require suppression); *United States v. Berry*, 113 F.3d 121, 123-24 (8th Cir. 1997) (even if nighttime search was invalid, good faith exception to exclusionary rule applied); *Smith*, 63 F.3d at 769 (*Leon* applicable where judge failed to sign jurat on warrant affidavit; court stresses that error was fault of judicial officer and not police officer); *United States v. Freeman*, 897 F.2d 346, 348-50 (8th Cir. 1990) (although revenue agent was not peace officer empowered by state law to apply for search warrant, exclusion of evidence seized pursuant to warrant was not required where agent who carried out application and execution did so in good faith).

Agent Sedlmajer's reliance on the search warrant was in good faith and objectively reasonable. He rightfully believed he had an enforceable warrant, or at least court-approved authority, to search for and seize evidence germane to the Burnette and Westover burglaries from Debra's home. A reasonably well-trained officer in his position would not have known that the search and seizure of evidence from the home were illegal after the judge approved them.[29]

Persuaded by *Leon* and precedent in this and other circuits, the Court concludes that the physical evidence obtained from Debra's residence should not be suppressed. If other cases, including those from the Eighth Circuit and this District, would probably find the search warrant valid, it is difficult to say Agent Sedlmajer's conduct in honoring the warrant was objectively unreasonable. Any errors were the tribal judge's fault, not the agent's.

Applying the Exclusionary Rule here would serve no useful deterrent purpose because the rare occasion when a judge makes one or more inadvertent mistakes cannot be eliminated by suppressing the evidence in that situation.[30] The judge is the final reviewing official who "must shoulder the ultimate responsibility for procedural errors

---

[29]*See Leon*, 468 U.S. at 922, n.23; *Long*, 797 F.3d at 568; *Farlee*, 757 F.3d at 819; *Moya*, 690 F.3d at 948-49; *United States v Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008); *Hessman*, 369 F.3d at 1023;

[30]*See Leon*, 468 U.S. at 918-21, 926; *Hessman*, 369 F.3d at 1022 (*citing Richardson*, 943 F.2d at 551).

in [the] warrant application process."[31]   Agent Sedlmajer should not be expected to question the judgment of a judicial officer as to the technical sufficiency of a warrant.[32]

It is important to remember that the Constitution protects individuals not by giving them a license to engage the police in a debate over the propriety of a warrant, but by interposing the impartial judgment of a judicial officer between themselves and the police and by providing a right to suppress evidence improperly obtained. Jeremy and Jesse received the benefit of a judge's independent evaluation before their mother's house (where they were residing) was searched. The search was supported by enough probable cause to make it arguably sufficient. Suppression of the evidence seized from the home would be a remedy out of proportion to any Fourth Amendment transgression that may have taken place and is uncalled for in this case.[33]

## D. Jesse's Statements and Buccal Swabs

Jesse additionally claims that the waiver of his *Miranda* rights was invalid and that the statements and buccal swabs he gave were extracted involuntarily. He seeks to exclude his statements and the swabs from being used against him at trial.

---

[31]*Berry,* 113 F.3d at 124; *Valandra,* 2011 WL 3439919 at *6.

[32]*See Leon,* 468 U.S. at 921; *United States v. Hyten,* 5 F.3d 1154, 1156, n.5 (8th Cir. 1993); *United States v. Gibson,* 928 F.2d 250, 253-54 (8th Cir. 1991); *Valandra,* 2011 WL 3439919 at **5-6.

[33]*See Leon,* 468 U.S. at 918-21, 926.

14

### 1. Waiver

The *Miranda* waiver inquiry has "two distinct mentions":  the waiver must (1) have been voluntary in the sense that it was the product of a free and deliberate choice rather than "intimidation, coercion, or deception" and (2) be made "with the full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[34]  The totality of the circumstances are to be considered when determining whether a suspect's waiver is invalid.[35]

The audio recording irrefutably shows that Jesse waived his *Miranda* rights. There is no basis to conclude that he did not understand his rights.  It therefore follows that he chose not to invoke or rely on them when he spoke to Agents Sedlmajer and Provost.

First, credible evidence proves that Jesse was mindful of his rights and knew what he was doing.[36]  He was read each of them, including his right to remain silent, to have an attorney present, and to stop answering questions at any time.

Second, Jesse's oral and written waivers are telling manifestations that he understood his rights and was disposed – at the time – to give them up.  And his willingness to engage in a lengthy colloquy without the benefit of a lawyer and make

---

[34]*Berghuis v. Thompkins*, 560 U.S. 370, 382-93 (2010) (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

[35]*See Burbine*, 475 U.S. at 421.

[36]*See Berghuis*, 560 U.S. at 385-86; *Burbine*, 475 U.S. at 421.

statements – many of which were incriminating – was a "course of conduct indicating waiver" of his rights.[37] If Jesse wanted to remain silent, then he could have said nothing in response to the agents' questions, or he could have unambiguously invoked his *Miranda* rights and ended the interrogation. The fact that he chose not to and elected – himself – to participate in a sustained dialogue with the agents is validation of a full-fledged waiver.[38]

Third, there is no evidence, worthy of belief, that Jesse's statements were coerced.[39] At no time did the agents threaten or intimidate Jesse or yell, raise their voices or become hostile toward him. Nor did they use any force, employ any punishment, brandish their weapons, or use rubber hose tactics to get him to talk. Jesse's age, education, background (including his familiarity with the criminal justice system) and conduct that day did not intimate that he was low functioning or particularly suggestible and vulnerable to questioning by authority figures. His responses to inquiries also convincingly showed that he was not suffering from any mental afflictions or having any difficulty understanding questions posed to him. And he cooperated with the agents, talking on his own and volunteering information at times, and denied burglarizing the Westover residence.

---

[37]*Berghuis*, 560 U.S. at 386.

[38]*See id.*

[39]*See id.* (citing *Burbine*, 475 U.S. at 421); *Colorado v. Connelly*, 479 U.S. 157, 163-67, 170 (1986).

16

Contrary to what Jesse argues, the agents did not break down his will to resist confessing by using deceptive stratagems or through the manner in which they interviewed him. He was not promised any leniency if he provided information to investigators. The recording reveals that he was in complete control of his faculties and that he possessed the wherewithal and fortitude to temper his admissions and refuse to provide his drug sources.

In the final analysis, this is not one of those isolated cases in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing agents and incriminate himself. There is nothing in the record that demonstrates Jesse was incapable of waiving his rights. He did not say or do anything that conveyed an inability, on his part, to comprehend and appreciate his rights and the implications of what he was doing. Instead, the recording establishes that he was quite cognizant of his situation and willing to converse with the agents. Jesse's statements were made with a full awareness of his rights and after he knowingly, voluntarily, and intelligently waived them.[40]

---

[40]*See Berghuis*, 560 U.S. at 382-89; *North Carolina v. Butler*, 441 U.S. 369 (1979); *United States v. Vinton*, 631 F.3d 476, 483-84 (8th Cir.), *cert. denied*, 565 U.S. 866 (2011); *United States v. Gaddy*, 532 F.3d 783, 787-89 (8th Cir.), *cert. denied*, 555 U.S. 1019 (2008); *United States v. Braveheart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *United States v. Circle Bear*, No. 3:14-CR-30122-RAL, 2015 WL 1969413 at *9 (May 1, 2015); *United States v. Poorman*, No. 3:14-CR-30101-RAL, 2015 WL 788050 at *1 (D.S.D. Feb. 24, 2015); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.9(b), (c) (4th ed. 2015).

## 2. Consent

The same is true of the buccal swabs collected from Jesse's mouth. He consented, orally and in writing, to swabs being taken and his consent was voluntary and not the product of duress or coercion.[41] Jesse was a 30-year-old high school graduate at the time he was asked to provide the swabs and was able to make a free choice as to whether to do so. He had previously been arrested and incarcerated and was therefore familiar with the protections afforded to criminal suspects. He also had been informed of, and had waived, his *Miranda* rights and talked to the agents for approximately 30 minutes before the swab request was made. No vows or misrepresentations were made to him and no subtle forms of coercion were used to flaw his judgment. The fact that the request was made while he was in custody, although relevant, was not enough to vitiate his consent.[42] This being the case, the swab evidence Jesse provided, like the statements he gave that day, is admissible at trial.[43]

In so ruling, the Court is mindful of Jesse's claim that the buccal swabs gathered from him, and any testing/comparison of them, should be suppressed because they

---

[41]*See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

[42]*See United States v. Watson*, 423 U.S. 411, 424-25 & n. 14 (1976); *United States v. Flores*, 474 F.3d 1100, 1104-05 (8th Cir. 2007).

[43]*See United States v. Brave Bird*, 3:16-CR-30061-01-RAL, 2016 WL 6603170 at **5-6 (D.S.D. Nov. 8, 2016); *United States v. Cloud*, Crim. No. 10-47 (RHK/RLE), 2010 WL 2301537 at **2-7 (D. Minn. April 19, 2010), *r&r adopted*, 2010 WL 2301534 (D. Minn. June 4, 2010); *United States v. Eastman*, 256 F.Supp.2d 1012, 1021 (D.S.D. 2003).

were the "tainted fruit" of a Fourth Amendment infraction. But the Court's application

of *Leon* and the good-faith exception to the Exclusionary Rule forecloses this claim and

the need for any analysis of it.[44]

### 3. Voluntariness

"Cases in which a defendant can make a colorable argument that a self-

incriminating statement was 'compelled' despite the fact that law enforcement

authorities adhered to the dictates of *Miranda* are rare."[45] The analysis used in

determining the voluntariness of the defendant's *Miranda* waiver and statements under

the Fifth Amendment is essentially the same.[46] Under this analysis, "[a]bsent evidence

that [the defendant's will] was overborne and his capacity for self-determination

critically impaired because or coercive police conduct" the statements he made will be

considered voluntary.[47]

---

[44]*See Hessman*, 369 F.3d at 1023-24; *see also United States v. Hughes*, 127 F.3d 1132, 1133 (8th Cir. 1997) (applying *Leon* and finding no basis upon which to reverse the denial of defendant's motion to suppress), *cert. denied*, 523 U.S. 1013 (1998); *LaBatte*, 2013 WL 2286340 at *8 (because search warrant did not violate Fourth Amendment, search was not poisonous tree from which any tainted fruit could fall).

[45]*Dickerson v. United States*, 530 U.S. 428, 444 (2000) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)).

[46]*See United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013); *United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995).

[47]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

The Court has already concluded that Jesse voluntarily waived his *Miranda* rights. The record also shows that the statements he made at the jail were voluntary within the meaning of the Fifth Amendment's Due Process Clause. They were not elicited by threats, violence or express or implied promises that overwhelmed his will and acutely disabled his capacity to fend off the urge to incriminate himself.[48] Rather, they were the product of essentially free and unconstrained decisions he made.[49] There being no *Miranda* or Fifth Amendment violation, Jesse's statements may be used against him as substantive evidence at trial.

## CONCLUSION

Stoneman has no standing to challenge the warrant-based search of Debra's home and the seizure of evidence from it. The search and seizure, in any event, were based on an objectively reasonable (good faith) belief that the warrant, a judge found probable cause to issue, was valid. Jesse's custodial statements and buccal swabs, taken after a *Miranda* waiver and consent had been given, were valid too because they were knowingly, voluntarily and intelligently obtained. Stoneman's statements, which he never identified or provided legal grounds to contest, are not suppressible either. Jeremy, Jesse, and Stoneman thus cannot succeed on their motion, and exclude from use

---

[48]*See United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

[49]*See Schneckloth*, 412 U.S. at 225.

at trial, the evidence found in the residence or what one or more them may have offered to tribal agents.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth herein, and the record now before the Court, it is hereby

RECOMMENDED that Jesse's Motion to Suppress,[50] and Jeremy and Stoneman's joinders[51] in the Motion and the supporting memorandum to it,[52] be DENIED.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[53] Unless an extension of time for cause is later obtained,[54] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[55] Objections must "identify[] those issues on which further review is desired[.]"[56]

---

[50]See Dkt. No. 134.

[51]See id. at 136, 161.

[52]See id. at 135.

[53]See 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[54]See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990); Nash v. Black, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140, 155 (1985)).

[55]See Thompson, 897 F.2d at 357; Nash, 781 at 667.

[56]Arn, 474 U.S. at 155.

DATED this 30ᵗʰ day of October, 2017, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE