UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
DEC 22 2017

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEREMIAH R. WALN, JESSE J. WALN, AND DOMINIC JOSEPH STONEMAN,<br><br>Defendants. | 3:17-CR-30004-01-02-04-RAL<br><br><br>OPINION AND ORDER<br>ON PENDING MOTIONS |

The United States indicted these Defendants in a ten-count indictment. Defendants Dakota James Marshall, Danielle Marissa White Eyes, and Ronald Moran have entered into plea agreements and have pleaded guilty to resolve federal charges against them. Defendant Jeremiah R. Waln (Jeremiah), Jesse J. Waln (Jesse), and Dominic Joseph Stoneman (Stoneman) presently are set to be tried together during the week of January 2, 2018. There are a number of motions pending in this case, including motions from each of the Defendants for 10 additional peremptory challenges each (for a total of 30 defense peremptory challenges), motions to sever filed separately by Jeremiah and Jesse, and other pretrial motions. This Opinion and Order is to address those motions upon which a ruling can be made.

Counts I and II of the Indictment charge Jeremiah and Jesse with burglary and larceny between May 20 and May 22, 2016, on the Rosebud Indian Reservation of the home of Patricia Burnette and Peggy Diekhoff. Doc. 1. Stoneman and the other codefendants are not charged in Counts I and II.

Counts III and IV of the Indictment charge Jeremiah, Jesse, and Stoneman, as well as Marshall and White Eyes, with burglary and larceny respectively between November 11 and November 13, 2016, of the Beau Westover home. Doc. 1. Count V charges the same group of Defendants with larceny during the same days of Keller Electric property. Doc. 1.

Count VI of the Indictment charges Jesse with possession of a stolen firearm in November of 2016—a Savage rifle—which was among the items allegedly stolen from the Beau Westover home. Doc. 1. Count VII of the Indictment charges Jeremiah and Jesse with possession of a stolen firearm—a Benelli shotgun—which was among the items allegedly stolen from the Beau Westover home. Doc. 1.

Counts VIII and IX charge only Marshall with crimes, while Count X charges only Moran with a crime. Doc. 1. The plea agreements and guilty pleas by Marshall and Moran avoid the need for any trial on Counts VIII, IX, and X.

Each of the remaining Defendants has filed requests for additional peremptory challenges. Docs. 228, 262, 263. Defendants thus seek a total of 30 peremptory challenges to the Government's allotted 6 peremptory challenges. Federal Rule of Criminal Procedure 24(b)(2) governs peremptory challenges:

> (b) **Peremptory challenges.** Each side is entitled to the number of peremptory challenges to prospective jurors specified below. The court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly.
>
> . . .
>
> (2) *Other Felony Case.*[1] The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year.

Whether to grant additional peremptory challenges beyond those specified under Rule 24(b)(2) is committed to the sound discretion of the trial court. United States v. Cartwright, 528 F.2d

---

[1] Rule 24(b)(1) governs peremptory challenges in a capital case. This is an "other felony case."

168, 175 (7th Cir. 1975). This Court has granted one additional challenge per defendant previously, United States v. Lone Eagle, 15-CR-30050-RAL, Doc. 89, and has denied any additional challenges previously, United States v. Waloke, 16-CR-30148-RAL. This Court will deny the requests for an additional 10 peremptory challenges for each defendant, but will defer deciding whether to grant any additional peremptory challenges to the Defendants until the pretrial conference and motion hearing. If this Court does grant any additional peremptory challenges, it likely will be no more than one more per defendant and possibly contingent on the Defendants agreeing that, in fairness, the Government receive at least one additional peremptory challenge. See United States v. Tucker, 526 F.2d 279, 283 (5th Cir. 1976) (upholding the conditioning of grant of additional defense peremptory challenges on allowing government additional peremptory challenges).

Both Jesse and very recently Jeremiah filed motions to sever, seeking separate trials from other Defendants and multiple trials of the various charges against them. Docs. 254, 264. The Government opposes Jesse's motion to sever, Doc. 257, and has not yet filed a response to the very recent motion to sever filed by Jeremiah. The motion to sever filed by Jesse is easy to deny, but the motion to sever filed by Jeremiah presents an issue where, depending on the Government's intentions with presenting evidence of Jesse's statements to law enforcement, Jesse may need to be tried separately.

Jeremiah and Jesse first argue that trial on Counts I and II should be severed from trials on Counts III, IV, and V because the alleged burglaries and larcenies occurred some six months apart and involved different participants and different victims. Doc. 255 at 3; Doc. 265 at 3. Rule 8(a) of the Federal Rules of Criminal Procedure, however, provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

3

Fed. R. Crim. P. 8(a). "The rule is broadly construed in favor of joinder to promote the efficient administration of justice." United States v. Taken Alive, 513 F.3d 899, 902 (8th Cir. 2008).

Here the alleged burglary and larceny in May of 2016 of the Burnett/Diekhoff home is "of the same or similar character" as the alleged burglary and larceny of the Westover home in November 2016 and the alleged larceny of the Keller Electric property on the same dates. See Fed. R. Crim. P. 8(a). Both crimes allegedly involved both Jeremiah and Jesse and occurred on the Rosebud Indian Reservation. Jeremiah and Jesse do not appear to seek to sever trial of Counts VI and VII, which are the possession of stolen firearms charges, and indeed those allegations "are connected with or constitute parts of a common scheme or plan" or "are based on the same act or transaction" under Rule 8(a) as those are guns presumably stolen from the Westover residence. Neither Jesse nor Jeremiah are entitled to multiple and separate trials on the alleged Burnett/Diekhoff theft and the alleged Westover/Keller Electric thefts and related counts.

Jeremiah and Jesse next argue that they should receive separate trials from each other under Rule 8(b) of the Federal Rules of Criminal Procedure. Rule 8(b) allows the government to charge two or more defendants in the same indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "Generally, the 'same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme." United States v. Wadena, 152 F.3d 832, 848 (8th Cir. 1998)). The Supreme Court has expressed "a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Consistent with this preference, the prerequisites of Rule 8(b) "are liberally construed in favor of joinder." United States v. Rimell, 21 F.3d 281, 288 (8th Cir. 1994). When determining whether joinder is appropriate under Rule 8, this court looks only to the allegations contained in the indictment. United States v. Lone Eagle, No. 15-CR-30050-RAL, 2015 WL 5999518 at *1 (D.S.D. Oct. 14, 2015); United States v. Condon, No. 3:14-CR-30083-01-02-RAL,

2014 WL 6694782, at *2–5 (D.S.D. Nov. 26, 2014); United States v. Young, 14-CR-30065-RAL, 2014 WL 4925255, at *2 (D.S.D. Sept. 30, 2014).

Here, all counts of the indictment charge both Jeremiah and Jesse with burglary and larceny first of the Burnett/Diekhoff home in May of 2016 and then with the Westover home and Keller Electric in November of 2016 on the Rosebud Indian Reservation, and with being in possession of stolen firearms after the Westover burglary and larceny. Doc. 1. These allegations satisfy the "same series of acts or transactions" requirement of Rule 8(b). See Young, 2014 WL 4925255, at *1–2 (concluding that joinder of defendants was proper under Rule 8(b) where defendants, although not charged with aiding and abetting one another, were charged with committing the same or similar crimes against the same victim in the same location in a narrow period of time); United States v. Hawk, No. Cr. 10-30025(02)-RAL, 2010 WL 2219213, at *1–2 (D.S.D. June 2, 2010) (holding that defendants charged in the same count with assaulting the same victim were properly joined); see also United States v. Gravatt, 280 F.3d 1189, 1191 (8th Cir. 2002) ("Persons . . . jointly indicted on similar evidence from the same or related events should be tried together . . . .").

Neither Jeremiah nor Jesse explained why joinder is improper in this case, other than arguing that the indictment did not "reveal any basis for joinder" or "any alleged connection." Doc. 255 at 4; Doc. 265 at 4. The Indictment however does allege that both Jeremiah and Jesse were involved in both burglaries/larcenies. Doc. 1. Of course, prejudice alone does not render joinder improper under Rule 8(b) when, as here, the indictment satisfies Rule 8(b)'s prerequisites. See United States v. Rittweger, 524 F.3d 171, 178 (2d. Cir. 2008) ("The question of whether [defendants] faced prejudice—or were in fact prejudiced—by joinder under Rule 8(b) presents the altogether separate inquiry of whether the trial of these defendants should have been severed under Rule 14."); United States v. Jones, 880 F.2d 55, 61 (8th Cir. 1989) (noting that Rule 8(b) "permits" the type of prejudice that results "when several defendants are jointly charged with a single or related offenses" (quoting

5

Cupp v. United States, 359 F.2d 990, 993 (D.C. Cir. 1966))). Because joinder is proper under Rule 8(b), this Court turns to Defendants' request for severance under Rule 14(a).

Rule 14(a) permits relief from prejudicial joinder as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires..

Fed. R. Crim. P. 14(a). The Supreme Court has instructed that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 560 U.S. at 540. Rather, a district court is to grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539. A defendant attempting to demonstrate the requisite prejudice under Rule 14(a) "carries a heavy burden." United States v. Sandstrom, 594 F.3d 634, 644 (8th Cir. 2010) (quoting United States v. Swinney, 970 F.2d 494, 500 (8th Cir. 1992)). He may meet this burden by showing that "(a) his defense is irreconcilable with that of his codefendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." United States v. Sanchez-Garcia, 685 F.3d 745, 754 (8th Cir. 2012) (quoting United States v. Davis, 534 F.3d 903, 916–17 (8th Cir. 2008)). "Generally, the risk that a joint trial will prejudice one or more of the defendants 'is best cured by careful and thorough jury instructions.'" Davis, 534 F.3d at 917 (quoting United States v. Mickelson, 378 F.3d 810, 817–18 (8th Cir. 2004)).

Jeremiah and Jesse argue that severance is warranted under Rule 14(a) because the three codefendants who have pleaded guilty are cooperating Government witnesses who will implicate Jeremiah and Jesse in the Westover/Keller Electric theft but not in the Burnett/Diekhoff theft. Jeremiah and Jesse then argue that somehow the jury will not be able to compartmentalize evidence against each Defendant as a result. Doc. 255 at 5; Doc. 265 at 5. That argument is unpersuasive and

not a reason for severing defendants under Rule 14(a). Any possible confusion about whether evidence of the Westover/Keller Electric theft impacts decision making on the Burnett/Diekhoff theft can be handled by instructions from the Court.

A much bigger concern to this Court is a possible issue under Bruton v. United States, 391 U.S. 123 (1968), based on Jesse's statements to law enforcement inculpating himself as well as Jeremiah and Stoneman, because the admission of these incriminating statements without Jesse taking the stand to testify could violate Jeremiah's right of confrontation under the Sixth Amendment.[2] Jesse in a recorded statement to Rosebud Sioux Tribe Law Enforcement agents Robert Sedlmajer and Kory Provost, after being read his Miranda rights, blamed Jeremiah and codefendant Dakota Marshall for the Westover and Keller Electric thefts. Jesse claimed to have seen the loot from those thefts in the garage of the home where Jesse and Jeremiah were living at the time, but denied entering the Westover home. Jesse admitted that, with Jeremiah's knowledge and consent, Jesse took two firearms with him knowing them to be stolen and hid them on property belonging to Jesse and Jeremiah's father. Jesse stated that he was using methamphetamine as was Jeremiah and further that Jeremiah had a bad reputation and bad temper. As for the Burnett/Diekhoff burglary and larceny, Jesse claimed that he entered that home only after Jeremiah and Stoneman had stolen items and ransacked it, noticed a signed and framed Michael Jordan poster, and took only that poster from the home.

The Supreme Court in Bruton held that the admission of a non-testifying codefendant's confession naming the defendant as a participant in the crime at their joint trial violated the defendant's rights under the Confrontation Clause of the Sixth Amendment, even though the jury was instructed to consider the confession only against the codefendant. Id. at 126. The Supreme Court reasoned that although it is often appropriate to assume that a jury will follow a trial judge's limiting

---

[2] Admission of Jesse's statements may or may not violate Stoneman's rights under the Sixth Amendment. Stoneman as yet has not filed a motion to sever.

instructions, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135. The Court concluded that one such context was "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." Id. at 135–36.

The Supreme Court clarified the scope of Bruton in Richardson v. Marsh, 481 U.S. 200 (1987) and Gray v. Maryland, 523 U.S. 185 (1998). In Richardson, the Supreme Court held that there is no Confrontation Clause violation when the defendant's name and existence are redacted from his codefendant's confession and limiting instructions are given, even though the confession might incriminate the defendant when linked to other evidence. 481 U.S. at 211. The Supreme Court reasoned that unlike the confession in Bruton, which "expressly implicat[ed]" the defendant, the confession in Richardson was not facially incriminating and therefore did not raise the same "overwhelming probability" that the jury would be unable to follow a limiting instruction. Id. (alteration in original). In Gray, however, the Supreme Court held that "obvious" redactions of a codefendant's statement, like substituting the defendant's name with a blank space or the word "deleted," may violate a defendant's rights under the Confrontation Clause, despite the use of a limiting instruction. Gray, 523 U.S. at 195 ("[W]e believe that, considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to Bruton's unredacted confessions as to warrant the same legal results.").

When determining whether a statement violates Bruton, courts within the Eighth Circuit evaluate "whether the context is one in which the risk is too great that the jury will not or cannot follow the cautionary instruction to consider the statement solely against the declarant." United States v. Mueller, 661 F.3d 338, 348–49 (8th Cir. 2011) (quoting Sandstrom, 594 F.3d at 648). The

Government opposed Jesse's motion to sever without discussing the Bruton issue. Jesse, however, is the Defendant who made incriminating statements to law enforcements that may be admitted at trial. The admission of such statement against Jesse—as the maker of the statement—presents no Confrontation Clause issue. Rather, it is Jeremiah who has a legitimate Confrontation Clause issue under Bruton if Jesse's statement is admitted and Jesse does not testify. If that occurs, Jeremiah would be deprived of the right to cross-examine the declarant Jesse and the jury could well, regardless of being instructed otherwise, take Jesse's inculpatory statements as evidence against Jeremiah. The Government has not responded to Jeremiah's very recently filed motion to sever, so this Court does not know if the Government is proposing not to use Jesse's inculpatory statements at all or to somehow limit them to the point where no Bruton issue would exist, or to have the jury consider the charges against Jeremiah and Stoneman first, then hear Jesse's statements and only then deliberate anew on the charges against Jesse.

Jesse's request for a severance under Rule 14(a) is denied because he has not offered any reason why he would suffer unfair prejudice should he be tried with Jeremiah and Stoneman. Jeremiah's motion to sever under Rule 14(a) is taken under advisement pending a response from the Government.

Stoneman has filed a Motion for Access to Jury List and Questionnaires, Doc. 260, which is granted. Jeremiah has filed a Motion for Individualized Voir Dire, Doc. 267, which this Court will grant to permit each defense attorney to do voir dire for Defendants tried together. Ruling on the remaining motion in limine will be made at the pretrial conference and motion hearing. Therefore, it is hereby

ORDERED that Jesse's Motion to Sever, Doc. 254, is denied. It is further

ORDERED that the requests for 10 extra peremptory challenges per Defendant, Docs. 228, 262, and 263, are denied, although the Court may take up the issue of additional peremptory challenges for each side at the pretrial conference and motion hearing. It is further

ORDERED that Stoneman's Motion for Access to Jury List and Questionnaires, Doc. 260, is granted. It is further

ORDERED that the Motion for Individualized Voir Dire, Doc. 267, is granted to the extent that each defense attorney will be allowed to conduct voir dire.

DATED this 22nd day of December, 2017.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE